## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DEBORAH MORGAN**                                    **CIVIL ACTION**

**VERSUS**                                            **NO. 11-2461**

**GREAT SOUTHERN DREDGING, INC., et al.**             **SECTION: "G"(2)**

### ORDER AND REASONS

Before the Court is Plaintiff Deborah Morgan's ("Plaintiff") (individually and on behalf of her deceased husband, William M. Morgan), Motion to Remand,[1] which seeks to have this matter remanded to Civil District Court for the Parish of Orleans because she claims defendants have not established the necessary requirements permitting removal on the basis of 28 U.S.C. § 1442(a)(1),[2] and because Plaintiff's Jones Act claim is not subject to removal.  Having considered the motion, the response, the reply, the record, and the applicable law, for the following reasons, the Court will grant Plaintiff's Motion to Remand.

### I. Background

***A.  Factual Background***

The U.S. Army Corps of Engineers ("Corps") awarded a contract to Defendant Archer Western ("AWA") to carry out a levee repair and construction project ("Project") in New Orleans East.[3] AWA hired Great Southern Dredging, Inc. ("Great Southern") to perform a portion of the

---

[1]Rec. Doc. 12.

[2]Rec. Doc. 1.

[3] Rec. Doc. 16 at p. 1.

1

work under the Corps' contract.[4]   In connection with the Project, according to AWA and Great Southern, the Corps also contracted with URS Corporation ("URS") "to provide Quality Assurance Inspectors to represent the Corps in relation to its project."[5]   Ronald Maggio ("Maggio"), an employee of URS, in his role as Quality Assurance Inspector at CTU-6 pump station, was to act as the "eyes and ears" of the Corps.[6]   Maggio carried out this "de facto on-site federal officer" function by first reviewing the plans and specifications of the Project, and then monitoring the work performed by Great Southern employees to ensure compliance with the Corps' plans and specifications.[7]   If Maggio determined that Great Southern employees deviated from the plans and specifications, according to Great Southern, Maggio had the authority to stop the non-compliant work and consult with Great Southern's on-site supervisor to ensure Great Southern's compliance once work resumed.[8]

William Morgan ("Morgan"), Plaintiff's husband, was employed by Great Southern and assigned to work on the Project.[9]   On April 12, 2011, the crew was scheduled to assemble and install a pump.[10]   However, when a crane operator did not arrive at the site, the crew met and decided to

---

[4]  *Id.* at p. 1.

[5]  *Id.* at pp. 4, 6-7; Ex. 16-1 at pp. 1-2.  URS provided Quality Assurance Inspectors to represent the interests of the Corps in relation to the contract designated as "W912P8-09-C-0062."  Rec. Doc. 16-1 at p. 1.

[6]  Rec. Doc. 16 at pp. 4, 7; Ex. 16-1 at p. 2.

[7]  Rec. Doc. 16 at p. 7.

[8]  Rec. Doc. 16-1 at p. 2.

[9]  Rec. Doc. 1-5 at p. 2.

[10]  Rec. Doc. 25 at p. 8.

modify the task and only assemble the pump.[11]  Great Southern employees attempted to assemble two pipes according to plan specifications set forth in the forty-three page Pump Installation Instructions and detailed drawing of the assembly, both prepared by the pump manufacturer and approved by the Corps.[12]  The Pump Installation Instructions and the detailed drawing called for the use of a nylon sling to hoist the intake pipe into the air for assembly.[13]  During the assembly, one of the pipes began to rotate, eventually allowing the pipe to come loose and collapse on top of Morgan.[14]  Morgan was crushed under the weight of the intake pipe and later died as a result of his injuries.[15]

### B.  Procedural Background

Plaintiff filed a Petition for Damages and Wrongful Death in the Civil District Court for the Parish of Orleans, State of Louisiana on September 29, 2011, against Great Southern and AWA (collectively   "Defendants"), claiming that her husband was a Jones Act seaman or, in the

---

[11]  It is unclear whether the task modification was to the production goal assigned for that day, to the manner in which the task was carried out, or both.  *See id.* at pp. 8-9.  Amanda Phillips's deposition alleges that Great Southern crew members reviewed the Pump Installation Manual incorporated into the Corps' plans and specifications the evening of April 11, 2011, but does not advise whether the crew followed the instructions contained therein.  *Id.*  In Plaintiff's Motion to Remand, Plaintiff alleges that Morgan's death was caused when the "straps detached from the backhoe, [causing] the pipe [to fall] onto Mr. Morgan crushing him."  Rec. Doc. 12-1 at p. 2.

[12]  Rec. Doc. 16 at pp. 5-6.  *See* Ex. 16-2 at pp. 1-2, Pump Installation Instructions; Ex. 16-3 at p. 8.  The Pump Installation Instructions and detailed drawing of the assembly were said to have been incorporated into the Corps' project plans and specifications.  Rec. Doc. 16 at pp. 5-6.

[13]  It is unclear from the briefs whether the "strap" referenced in Plaintiff's Reply Memorandum in Support of Motion to Remand is the same as the nylon sling referenced in the Pump Installation Instructions and detailed assembly drawing.  *See* Rec. Doc. 25 at p. 2.

[14]  *Id.*

[15]  *Id.*

alternative, that his death was caused by the intentional acts of Defendants so as to meet the exception to suits prohibited by the Louisiana Workers Compensation Act.[16]

On September 29, 2011, Great Southern filed a Notice of Removal in the Eastern District of Louisiana invoking this Court's jurisdiction pursuant to 28 U.S.C. § 1442(a)(1), the Federal Officer Removal Statute.[17]  The case was initially assigned to Section "C," Judge Helen "Ginger" Berrigan.[18] On October 6, 2012, this matter was transferred to Section "G."[19]  Plaintiff then timely filed a Motion to Remand, with supporting memorandum, on October 28, 2011.[20]  On March 20, 2012, AWA filed an Opposition to Plaintiff's Motion to Remand,[21] and subsequently Great Southern also filed an Opposition to the Motion to Remand on March 21, 2012.[22]  Plaintiff then filed a Reply Memorandum in Support of the Motion to Remand on March 29, 2012.[23] On April 16, 2012, Great Southern filed a Motion to Strike,[24] claiming that the affidavit Plaintiff filed in support of her Motion to Remand is inadmissible hearsay and cannot support her claim that her husband is a Jones Act seaman.  Great Southern filed a Supplemental Memorandum in Opposition to Plaintiff's Motion for Remand on April 17, 2012.[25]

---

[16] *See* Rec. Doc. 1-5.

[17] Rec. Doc. 1.

[18] Rec. Doc. 2.

[19] Rec. Doc. 6.

[20] Rec. Doc. 12.

[21] Rec. Doc. 16.

[22] Rec. Doc. 17.

[23] Rec. Doc. 25.

[24] Rec. Doc. 28.

[25] Rec. Doc. 33.

## II. Parties' Arguments

In Plaintiff's Motion to Remand, she argues that removal was improper because the removing party did not meet the requirements necessary to avail itself of the Federal Officer Removal Statute pursuant to 28 U.S.C. § 1442(a)(1). To prevail, Great Southern must demonstrate that: (1) it qualifies as a person under the statute; (2) it acted under the direction of a federal officer; (3) it has raised a federal defense to the plaintiff's claims; and (4) there is a causal nexus between the plaintiff's claims and the acts it performed under color of federal office.[26]

Regarding Plaintiffs allegations that Great Southern cannot establish the requirement that there is a causal nexus between Plaintiff's claims and the acts Defendants performed under the color of federal office, Plaintiff cites *Prigmore v. Jim Cooley Construction, Inc.*,[27] a case from the Eastern District of Louisiana where, according to Plaintiff, Judge Berrigan held that "the defendants' removal based upon federal officer removal jurisdiction was inappropriate and granted remand because the defendants failed to show a causal nexus between the plaintiff's personal injury claims and the defendants' actions under a Corps contract."[28] Plaintiff argues that the instant case, like the *Prigmore* case, deals with claims that are personal injury in nature, relates to culpable actions or inactions by the defendants, and deals with Corps' contracts that did not specifically require that Defendants engage in such culpable actions or inactions; therefore, according to Plaintiffs, Defendants here, similarly cannot "hide behind the guise of a Corps contract to establish federal officer removal jurisdiction."[29]

---

[26] Rec. Doc. 12-1 at p. 3 (citing *Mesa v. California*, 489 U.S. 121, 131-32 (1989)).

[27] No. 11-238, 2011 WL 2004961 (E.D. La. May 23, 2011).

[28] Rec. Doc. 12-1 at p. 4.

[29] *Id.* at p. 5.

Second, Plaintiff claims Great Southern has failed to establish the second factor of the Federal Officer Removal Statute, that it was acting under the direction of a federal officer. Plaintiff relies on *Winters v. Diamond Shamrock Chemical Co.*, where the Fifth Circuit held that the Federal Officer Removal Statute requires that the defendant was "acting under the direction of a federal officer."[30] Accordingly, the removing party must show that: (1) it had a contract with the government; (2) the government maintained strict control over development and production; (3) the government required production to be done in accordance with specifications set forth in the contract; and (4) the government performed inspections.[31] Plaintiff argues that Defendants have not established that the Corps maintained strict control over development and production under the contract, and that the Corps required production to be done in accordance with specifications set forth in the contract, other than the "self-serving affidavit signed by Great Southern's president, Amanda Phillips," even though "defendants presumably had access to a multitude of documents at the time of removal which would have shed light on whether the requirements were satisfied."[32]

In opposition to Plaintiff's Motion to Remand, AWA, not the removing defendant here, claims that "the plaintiff concedes that the defendants meet the [first] and [third] *Mesa* factors," and only addresses whether the "action taken under the direction of a federal officer" and the "causal nexus" requirements are met.[33] AWA alleges the "nexus requirement for § 1442(a)(1) is satisfied when [a] defendant contractor has performed in compliance with government specifications."[34]

---

[30] *Id.* (citing 149 F.3d 387, 398-400 (5th Cir. 1998)).

[31] *Id.*

[32] *Id.* at p. 6.

[33] Rec. Doc. 16 at p. 3.

[34] Rec. Doc. 12-1 at p. 6.

AWA relies on a different Eastern District case than Plaintiff, *Miles v. Sewerage & Water Bd. Of New Orleans*,[35] decided by Judge Stanwood Duval, to argue, "just as in *Miles*, in the present matter, AWA and Great Southern Dredging performed their work under the direct, daily supervision of the Corps through its appointed Quality Assurance Inspector, Mr. Ronald Maggio, and that Mr. Maggio was employed by URS Corporation, also hired by the Corps, to provide Quality Assurance Inspectors and to ensure that the work performed was in compliance with the Project's plans and specifications."[36]

AWA attempts to distinguish *Prigmore*, relied on by Plaintiffs, by claiming that although Judge Berrigan did not find a nexus between the plaintiff's claim and its work under the Corps' contract there because that contract did not specifically require defendants to maintain a muddy blacktop surface upon which plaintiff slipped; if that analysis was to be applied here, it would require the contract to provide for more detail than is practical.[37]  Nevertheless, AWA argues that the contract specification here did in fact address the use of a "nylon sling chocked around the impeller housing" for the purpose of lifting the mechanism plaintiff alleges was defective and led to her husband's fatal injuries.[38]

In Great Southern's Opposition to Plaintiff's Motion to Remand, it attempts to address the four factors necessary to meet the requirements to invoke the Federal Officer Removal Statute

---

[35] AWA cites *Miles v. Sewerage & Water Bd. Of New Orleans*, No. 04-1587, 2004 WL 1794527 (E.D. La. Aug. 10, 2004), where Judge Duval found removal by the Corps' contractor was appropriate because the contractor demonstrated a causal nexus between the plaintiff's claims and the work it performed due to the Corps' direct, daily supervision of its work, and because the work was accepted as in compliance with the Project plans and specifications.

[36] Rec. Doc. 16 at pp. 3-4.

[37] *Id.* at pp. 4-5.

[38] *Id.* at p. 6.

articulated in *Mesa*, as well.[39]  First, Great Southern argues that corporations are "persons" under

the Federal Officer Removal Statute, so Great Southern satisfies the first factor.[40]  Second, Great

Southern claims that the "uncontested evidence in the record of this case indicates that [Great

Southern] was working under the direction of a Federal Officer at the time of the accident because,

Maggio, [who was employed by a company that had a contract with the Corps,] was overseeing its

work."[41]  Third, Great Southern asserts that there is a clear causal connection between Great

Southern's actions involving "lifting the pump, and/or securing it to the lifting apparatus" and

Morgan's death.[42]  Finally, rather than averring a federal defense as required by *Mesa*, Great

Southern asserts that it has a "colorable claim to a federal defense" based on the aforementioned

arguments, and that "[a]ny determination as to the merits [of that defense] is collateral to the

jurisdictional question which is currently before the court."[43]

In Plaintiff's Reply Memorandum in Support of Motion to Remand,[44] Plaintiff further attacks

Defendants' allegations that they "acted under the direction of a federal officer" and/or that

defendants failed to allege a "causal nexus between the plaintiff's claims and the acts it performed

under color of federal office" because "[i]n its simplest terms, Mr. Morgan's death was caused when

one piece of the piping was allowed to rotate and essentially collapsed on top of him. This rotation

---

[39] Rec. Doc. 17 at p. 8.

[40] *Id.*

[41] *Id.* at p. 9.

[42] *Id.*

[43] *Id.* at p. 12.  Likewise, in Great Southern's Supplemental Memorandum in Opposition to Plaintiff's Motion for Remand, Defendant argues that Great Southern is "not required, at this point, to prove that the Federal Contractor Defense will ultimately be successful at trial." Rec. Doc. 27-1 at p. 2.

[44] Rec. Doc. 25.

of the pipes was allowed because the strap that had previously been securing the pipe was removed. Moments before Mr. Morgan's death, a decision was made by Great Southern employees to remove a support strap which had previously been holding up the piece of piping. The other end of this strap was secured to an excavator. During the process of attempting to connect the two pieces of piping, Great Southern made a decision to remove the strap from one of the pieces of piping. This, in turn, allowed the other piece of pipe to then rotate and crush Matthew Morgan."[35] Plaintiff goes on to conclude that because the "sole decision to remove the strap was that of Great Southern,"[36] Great Southern was not acting under the direction of a federal officer, here, Mr. Maggio, at the time of the accident and further, presumably by not following the specifications regarding the use of the nylon strap, there is no causal nexus between the Plaintiff's personal injury claims of negligence and intentional tort and the acts of Defendants' performance under color of federal office.[37]

Upon leave of Court, Defendant Great Southern filed a Supplemental Memorandum in Opposition to Plaintiff's Motion to Remand[38] wherein it states that it need not address Plaintiff's argument that Ron Maggio, the contractor hired by the U.S. Army Corps of Engineers to oversee this project, did not order removal of a strap which Plaintiff claims caused the accident at issue in this case, because as it stated in its earlier Opposition to the Motion to Remand, Great Southern need only demonstrate a "colorable claim" to the Federal Contractor Defense and that it is not required, at this point, to prove that the Federal Contractor Defense will ultimately be successful at trial.[39]

---

[35] *Id.* at p. 2.

[36] *Id.*

[37] *Id.* at pp. 2-14.

[38] Rec. Doc. 27.

[39] Rec. Doc. 27-1 at pp. 1-3.

### III. Law and Analysis

A removed case must be remanded to state court if the district court lacks subject matter jurisdiction.[40] "[W]hen faced with a motion to remand, the defendant has the burden of establishing the existence of federal jurisdiction over the controversy by a preponderance of the evidence."[41] Defendants argue that the present case was properly removed based upon the Federal Officer Removal Statute set forth in 28 U.S.C. § 1442(a)(1).[42] The Federal Officer Removal Statute provides in relevant part:

> (a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.[43]

The Supreme Court has held that the statute's basic purpose is to prevent the states from interfering with the official acts of federal officers and agencies by suing or prosecuting them in state court for violations of state law.[44]  The Fifth Circuit has instructed district courts to interpret

---

[40] 28 U.S.C. § 1447(c).

[41] *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 397 (5th Cir. 1998) (citing *Vasquez v. Alto Bonito Gravel Plant Corp.*, 56 F.3d 689, 692 (5th Cir. 1995); *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992); *Kidd v. Southwest Airlines Co.*, 891 F.2d 540, 543 (5th Cir. 1990)); *see also Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 65 (5th Cir. 2010).

[42] Rec. Doc. 1 at ¶ 6.

[43]  28 U.S.C. § 1442(a)(1).

[44]  *Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 150 (2007).

§ 1442(a)(1) broadly in order to "ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties."[45]   The Supreme Court has held that § 1442(a)(1) does not provide an independent basis of federal jurisdiction, but rather is only meant to avoid the restrictions of the well-pleaded complaint rule, which would otherwise prevent a federal defendant from obtaining removal based upon a federal defense.[46]   In *Mesa v. California*, postal employees who were separately charged in state criminal complaints with traffic violations arising out of unrelated incidents while they were operating mail trucks removed their cases pursuant to the Federal Officer Removal Statute.   The United States District Court for the Northern District of California denied the State's motion to remand.[47]   Upon writ of certiorari, the Supreme Court squarely rejected the Government's arguments that § 1442(a)(1) permits removal without assertion of a federal defense.[48]   The Court held that "Federal Officer Removal under 28 U.S.C. § 1442(a) must be predicated upon averment of a federal defense."[49]   The Court rejected the notion that the establishment of a causal connection between what the officer has done under asserted official authority and the state prosecution involved in this that case eliminated the federal defense requirement.[50]   And the removal in that case was precluded by failure of the Postal Services employee to raise any colorable claim of official immunity or other federal defense.

---

[45] *Winters*, 149 F.3d at 398.

[46] *Mesa*, 489 U.S. at 136-37 (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (internal quotations omitted)).

[47] *Mesa*, 489 U.S. at 124.

[48] *Id.* at 129.

[49] *Id.* at 139.

[50] *Id.* at 138-39.

11

Here, in its Memorandum in Opposition to Motion to Remand, where Great Southern addresses the requirement that "it has raised a federal defense to the plaintiff's claims," it states that, "at the very least, the uncontroverted evidence in the record shows that because [Great Southern] was working under specific plans approved by the Corps at the time of the accident, and was indeed represented by its 'eyes and ears,' Ron Maggio, at that time, [Great Southern] can thus make a colorable argument at trial that it is covered by this defense."[51]  The notion that establishing three prongs of the test, without actually asserting a federal defense, is sufficient to invoke federal jurisdiction pursuant to 28 U.S.C. § 1442(a) was squarely addressed and rejected by the Supreme Court in *Mesa*.  "Federal Officer removal under 28 U.S.C. § 1442(a) must be predicated upon an averment of a federal defense."[52]  Nowhere in these proceedings has Great Southern alleged a federal defense, an averment critical to invoking the federal officer jurisdictional statute.  In fact, as discussed below, none exist.

Further, although Great Southern states that it acted under the direction of a federal officer (despite the fact that it worked as a subcontractor to AWA) because its work was being overseen by Maggio, an employee of a company that had a contract with the Corps, those facts do not satisfy this requirement.  As noted above, in *Winters*, the Fifth Circuit stated that the Federal Official Removal statute requires that in order for a defendant to meet the requirement that it was "acting under the direction of a federal officer," the removing party must show that, (1) it had a contract with the government; (2) the government maintained strict control over development and production; (3) the government required production to be done in accordance with specifications set forth in the

---

[51] Rec. Doc. 17 at p. 12.
[52] *Mesa*, 489 U.S. at 139.

contract; and (4) the government performed inspections.[53]  Great Southern cannot show that it had

a contract with the government and so therefore, it cannot meet the requirement that it acted under

the direction of a federal officer.

Moreover, because Great Southern was not a government contractor itself, but merely a

subcontractor to AWA, it does not have a "colorable" federal contractor defense.  Great Southern

cites no authority controlling this Court's decision here, where the Federal Contractor Defense, even

if Great Southern had asserted it, would extend to subcontractors.[54]  Therefore, Great Southern does

not establish a colorable federal contractor defense.

Considering the Court will remand based on the grounds stated above, the Court need not

address Plaintiff's argument that her allegation that her husband, Morgan, was a Jones Act seaman

prevented removal of this action.

---

[53] 149 F.3d 387, 398 (5th Cir. 1998).

[54] Defendants' reliance on three cases out of the Eastern District of Louisiana is misplaced.  In two of those cases, *Miles v. Sewerage & Water Board of New Orleans*, No. 04-1587, 2004 WL 1794527 (E.D. La. Aug. 10, 2004), and *Shimon v. Sewerage & Water Board of New Orleans*, No. 05-1392, 2007 WL 4414709 (E.D. La. Dec. 14, 2007), the removing party was a general contractor of the Army Corps of Engineers and had directly entered into a contract with the Corps to conduct drainage improvements.  In *Prigmore v. Jim Cooley Construction, Inc.*, No. 11-0238, 2011 WL 2004961 (E.D. La. May 23, 2011), the contractor and subcontractor, Great Southern dredging jointly sought removal; however, Judge Berrigan granted the Motion to Remand on other grounds, finding that there was no causal nexus between the plaintiff's claims and the defendants' actions under the direction of a federal officer and therefore never addressed the issue of extending the Federal Contractor defense to subcontractors.

## IV. Conclusion

For the reasons stated above, this action must be remanded.  Great Southern neither alleges a federal defense or a colorable federal defense as required to invoke the federal official removal statute in this case nor does it establish that it acted under the direction of a federal officer. Accordingly, Great Southern does not meet the requirements necessary to avail itself of this Court's jurisdiction pursuant to 28 U.S.C. 1442(a)(1)  and so this case must be remanded to state court for further proceedings.

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand is **GRANTED**.

New Orleans, Louisiana, this __30th__ day of ___September___, 2012.


**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

14